In the Matter of The **NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Debtor.**

The **CITY OF NEW YORK, Petitioner** (for approval *nunc pro tunc* of condemnation of a parcel of the Trustees, real property)

v.

**Richard Joyce SMITH, Trustee of the property of the New York, New Haven and Hartford Railroad Company, Respondent.**

No. 30226.

United States District Court,
D. Connecticut.

Aug. 14, 1970.

See also, D.C., 334 F.Supp. 579.

Viele Avenue. The area has become heavily industrialized with consequent heavy demands for rail service.

3. As an adjunct to the right-of-way the Railroad reserved a strip of land fifty feet wide and four hundred twenty-one feet long adjacent to the right-of-way. The strip was reserved by retaining the fee ownership of one segment and reserving perpetual easements for trackage and other railroad facilities in two other segments.

4. In March 1961, the City of New York commenced a so-called "Assessable Improvement" proceeding under Chapter 12 of the City Charter then in effect for the purpose among others of acquiring land for the westerly extension of Oak Point Avenue. "Assessable Improvements", as then permitted by Chapter 12, were abolished January 1, 1962.

5. On July 7, 1961, The New York, New Haven and Hartford Railroad Company (referred to hereafter as "Debtor" or "Railroad") filed its voluntary petition for reorganization with this Court, pursuant to Section 77 of the Bankruptcy Act, and this Court duly approved said petition on the same date; and the Debtor ever since has been and now is subject to the jurisdiction of this Court pursuant to Section 77 of the Bankruptcy Act.

6. The City of New York had due notice of the Railroad's bankruptcy pursuant to the Bankruptcy Act. The City was not of a class requiring special notice.

7. Under the proceeding described in Finding "4" above, which combined the powers of condemnation with taxation, the City procured the entry of an order of the Supreme Court of New York, Bronx County, on August 24, 1961, which purported to take title to the Debtor's strip of land described in Finding "3" above.

8. On August 24, 1961, the Debtor's land purportedly condemned by the City was set aside and dedicated to rail trans-

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FINDINGS OF FACT

ANDERSON, Circuit Judge (sitting by designation).

1. In December, 1955, the New York, New Haven and Hartford Railroad Company acquired a tract of land in the Borough of Bronx, City of New York, for resale to users of rail transportation in an effort to increase its freight revenues.

2. The tract was subsequently resold except for a strip to carry a right-of-way extension from the Railroad's freight yards, lying to the northwest of the tract, curving thence through the tract to the west side of Tiffany Street opposite

**578**

portation purposes in furtherance of the Debtor's function and duties as an inter-state rail carrier.

9. Since acquisition in 1955 to the present, the Railroad's purportedly condemned land has become ever more essential for rail transportation purposes; pressure for rail service in the area has been steadily growing and the indications are that such demands will accelerate.

10. Additional heavy demands for rail service in the area are expected to come from the location of the "Fruit Auction" in the New York City Terminal Market at Hunts Point east of Tiffany Street, construction of which has commenced.

11. In order to provide adequate rail service to the City's Terminal Market, which is already served by rail, indications are that a connection will have to be made with the right-of-way described in Finding "2" above.

12. The Debtor's land purportedly condemned by the City on this date is essential for railroad transportation purposes.

13. The City of New York did not obtain the approval of this Court prior to the purported condemnation of the Debtor's real property on August 24, 1961.

14. The City had formal written notice that the property purportedly condemned was owned by Trustees in bankruptcy by documents dated August 2, 1962, October 15, 1962, November 4, 1962 and November 16, 1962, filed by the Trustees with the City.

15. The City could have applied to this Court at any time after July 7, 1961, to have determined whether or not approval for the condemnation might have been obtained. Such a step required only the preparation and filing of a petition and would have given the City an opportunity to avoid most, if not all, of the outlays expended on the property taken.

16. The City failed to minimize its damages and such that it may have suffered are due solely to its acts or omissions.

17. On December 31, 1968, the property purportedly condemned was conveyed to the Penn Central Company (now Penn Central Transportation Company by change of name).

■ 8. Acts of the Trustees subsequent to August 24, 1961 in respect to the purportedly condemned property were consistent with their duties to protect all the interests of the Debtor and discharge its duties as an inter-state rail carrier. These acts in no way constitute a waiver or estoppel of the Trustee's right to oppose the prosecution of the condemnation action as against the Debtor.

■ 9. Expenditures claimed to have been made by the City in the Debtor's purportedly condemned property are attributable to laches on the part of the City.

■ 10. The doctrine of *"Nunc Pro Tunc"* for the retroactive entry of an order as requested by the City is not applicable in this case.

11. Rights of third parties have intervened since August 24, 1961, when the purportedly condemned property was conveyed to the Penn Central Company (now Penn Central Transportation Company by change of name) on December 31, 1968, pursuant to this Court's Order No. 559.

12. The petition of The City of New York, in view of the evidence introduced at the hearing thereof, fails to present any cause of action upon which relief can be granted, and the petition should be denied in all respects.